**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| COLE HAAN LLC<br><br>    Plaintiff,<br><br>    v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, ENTITIES, UNINCORPORATED ASSOCIATIONS, AND/OR COLLECTIVE WHO OPERATE WEARBREEZE.CO,<br><br>    Defendant. | Case No.:  25-cv-01327<br><br>**Jury Trial Demanded** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Cole Haan LLC ("Cole Haan"), for its Complaint for Patent Infringement against the individuals, corporations, limited liability companies, partnerships, entities, unincorporated associations, and/or collectives who operate the website wearbreeze.co ("Defendants"), alleges as follows:

**INTRODUCTION**

1.       Once a purveyor of classic dress shoes, Cole Haan has evolved into a brand known for pushing the aesthetic boundaries of footwear while still remaining connected to its heritage by prioritizing craftmanship and high-quality materials. Cole Haan has developed its brand and earned its distinction through significant investments in the research, design, development, and marketing of its shoe designs and shoe innovations. To protect its innovations, Cole Haan has sought and been awarded hundreds of patents from the United States Patent and Trademark Office and patent offices throughout the world; and on the strength of its legally-protected innovations, Cole Haan

has grown to sell its shoes in approximately 100 countries and over 500 retail stores, as well as through its website and numerous third-party websites.

2.      Defendants are the individuals, entities, unincorporated associations, and/or collective who willfully and flagrantly infringe Cole Haan's patents and designs via the website wearbreeze.co (the "Breeze Website") and other outlets.

3.      According to public records, Defendants registered the Breeze Website on March 4, 2023. *See* Ex. A. On the same day of its registration, upon information and belief, Defendants launched the Breeze Website to the public, offering one model of shoe, the "Memory Foam Slip-Ons." *See* Ex. B. Curiously, on that very same launch day, the Breeze Website claimed the Memory Foam Slip-Ons somehow had a 4.8/5 rating "from 1,375 reviews" and that it was "[l]oved by 13700+ Happy Customers," featuring reviews from customers in the United States and elsewhere. *See id.*

4.      Sometime thereafter, the Breeze Website became replete with knockoffs and copies of various Cole Haan patented designs, including at least the following shoes offered on the Breeze Website:

> (1)  Urban – Ultra Comfortable Shoes ("Urban");
>
> (2)  Merino – Ultra Comfortable Shoes ("Merino");
>
> (3)  Flexknit – Ultra Comfortable Shoes ("Flexknit");
>
> (4)  Swift – Ultra Comfortable Shoes ("Swift");
>
> (5)  Flow – Ultra Comfortable Shoes ("Flow");
>
> (6)  Portland – Ultra Comfortable Shoes ("Portland");
>
> (7)  Ridge – Ultra Comfortable All-Weather Shoes ("Ridge");
>
> (8)  Oslo – Ultra comfortable Shoes ("Oslo");
>
> (9)  Atlas – Ultra Comfortable Shoes ("Atlas");

(10) Amalfi – Ultra Comfortable Loafers ("Amalfi"); and

(11) Mayfair – Ultra Comfortable Loafers ("Mayfair") (collectively, the "Accused Products").

| Urban – Ultra Comfortable Shoes[1] | Merino – Ultra Comfortable Shoes | Flexknit – Ultra Comfortable Shoes |
|---|---|---|
|  |  |  |
| Swift – Ultra Comfortable Shoes | Flow – Ultra Comfortable Shoes | Portland – Ultra Comfortable Shoes |
|  |  |  |
| Ridge – Ultra Comfortable All-Weather Shoes | Oslo – Ultra comfortable Shoes | Atlas – Ultra Comfortable Shoes |
|  |  |  |
| Amalfi – Ultra Comfortable Loafers | Mayfair – Ultra Comfortable Loafers | |
|  |  | |

[1] Reference to the "Urban" shoe includes separately released editions of that model, including but not limited to styles the Breeze Website refers to as "Blackout," "Lapis," "Stone," "Maroon," "Teal" and "Royal Blue."

5.      Desiring to resolve the matter short of litigation, on August 7, 2024, Cole Haan sent correspondence to Defendants regarding their infringing conduct.[2] Defendants did not respond and continued to sell the Accused Products. On January 31, 2025, in a final attempt to resolve this matter short of litigation, Cole Haan again sent correspondence to Defendants.[3] Defendants again ignored Cole Haan's correspondence. To this day, Defendants continue to infringe Cole Haan's patents.

6.      For Defendants' knowing, willful, and egregious disregard of Cole Haan's patents, Cole Haan seeks injunctive relief and damages, as well as all of its court costs, attorneys' fees, and related expenses incurred as a result of Defendants' willful infringement.

## PARTIES

7.      Plaintiff Cole Haan LLC is a Delaware limited liability company with a principal place of business at 150 Ocean Road, Greenland, New Hampshire 03840.

8.      Upon information and belief, Defendants are comprised of individuals, corporations, limited liability companies, partnerships, entities, unincorporated associations, and/or collectives who own and/or operate the Breeze Website and sell shoes under the name "Breeze."[4]

---

[2] Despite its efforts, Cole Haan was unable to find any reliable physical contact information for Defendants and thus sent correspondence to Defendants via email.

[3] Cole Haan sent the correspondence electronically to the email address on the Breeze Website and also to the physical address identified at the bottom of the Terms of Service page of the Breeze Website but, as set forth in ¶ 11, Cole Haan believes the address does not represent a reliable address for Defendants.

[4] Upon information and belief, Defendants' products under the "Breeze" name are also sold on Amazon by various seller accounts and ASINs, including the following: B0DK2XBWDW, B0DJKTK1SX; B0DFGZYPCT; B0DDPNZJDL; B0D97P8X71; B0DDXN5T29; B0DRNFR6PF; B0DLSM6956; B0DQQ3MLW3; B0DG8QTFG5; B0DRN6QZY4; B0DS64H2CY; B0DRCMXGCJ; B0DRF8KS9D; B0DHVFN5B9; B0DDHB9Z3Z; B0DSBBZZ43; B0DK1SVRWX; B0DRF6B8BT; and B0D5Q2GGZK.

9.      Upon information and belief, Defendants purposefully hide their true identity, and, upon information and belief, reside and operate outside of the United States, and work in concert with individuals or entities in the People's Republic of China in their scheme to copy, manufacture, market, and sell shoes covered by Cole Haan's patents.

10.      For example, all information regarding the Breeze Website has been "REDACTED FOR PRIVACY" from public databases – a common tactic of willful infringers and scammers (*see* Ex. A):



11.      As another example, buried at the bottom of the Terms of Service page on the Breeze Website is a statement indicating that questions should be sent to "MKY Brands Ltd." at "Summit House, 4-5 Mitchell Street, Edinburgh, Scotland EH 6 7BD."[5]  However, this address is merely an address offered by a mass virtual office provider, Simple Formations Services Limited, who markets itself by stating "[u]sing one of our addresses will keep your personal address private and allow your business to move anywhere in the world whilst your registered office remains constant."[6]  Moreover, information about "MKY Brands Ltd." is almost nonexistent. Upon information and belief, there are hundreds of "businesses" with the same address as the one identified at the bottom of the Terms of Service page on the Breeze Website.

---

[5] https://wearbreeze.co/policies/terms-of-service
[6] https://www.simpleformations.com/our-registered-office-addresses.htm

12.     Further, upon information and belief, when customers place an order on the Breeze Website, the products are shipped directly from China, *see e.g.*, the following shipping history which shows the order being processed in Yiwu, China:



13.     Upon information and belief, at least some of the time, when a customer orders shoes bearing the "Breeze" name from the Breeze Website, the shoe that arrives does not actually bear any "Breeze" name anywhere on the shoe and instead bears the name "HAOYUNDONG" – further evidencing a sham operation involving entities in China.

14.     Defendants, who have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b), use tactics to conceal their identity and the full scope of their operations, making it virtually impossible for Cole Haan to know Defendants' true identity and the exact interworking of its network. If and when Cole Haan receives additional credible information regarding Defendants' identity, Cole Haan will take appropriate steps to amend the Complaint.

## JURISDICTION AND VENUE

15.     This is a complaint for patent infringement arising under the patent laws of the United States (35 U.S.C. §§ 101 *et seq*.). This Court has subject matter jurisdiction pursuant to 28

U.S.C. §§ 1331 (federal question) and 1338(a) (any Act of Congress relating to patents or trademarks).

16.     Venue in this Court is proper under the provisions of 28 U.S.C. §§ 1391 and 1400, and this Court may properly exercise personal jurisdiction over Defendants because the Breeze Website directly targets business activities toward consumers in the United States, including Illinois. Defendants have targeted sales to Illinois residents by setting up and operating its website, which targets United States consumers by offering shipping to the United States, including Illinois, accepting payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, selling products featuring Cole Haan's patented designs to residents of Illinois. Defendants have committed tortious acts in Illinois, is engaging in interstate commerce, and have wrongfully caused Cole Haan substantial injury in the State of Illinois.

## FACTUAL BACKGROUND

### A. Cole Haan Background and Patents

17.     Cole Haan has grown into a brand customers know as an innovator of crafted and versatile fashionable footwear.

18.     Cole Haan's renown was not attained by happenstance: Cole Haan expends significant time, money, and other resources designing, researching, and developing its products.

19.     In addition to its R&D investments, Cole Haan dedicates significant resources to protecting its innovations.

20.     As a result, the United States Patent and Trademark Office and patent offices around the world have granted Cole Haan hundreds of patents in the past decade. Cole Haan also has many other patent applications presently pending.

21.     Relevant to this dispute, Cole Haan owns all right, title, and interest in, and has the right to sue and recover for all infringements of, U.S. Patent Nos.:

- U.S. Pat. No. 10,327,511 ("the '511 patent") (**Ex. C**);

- U.S. Pat. No. 10,443,163 ("the '163 patent") (**Ex. D**);

- U.S. Pat. No. 11,041,262 ("the '262 patent") (**Ex. E**);

- U.S. Pat. No. D809,264 ("the '264 patent") (**Ex. F**);

- U.S. Pat. No. D809,265 ("the '265 patent") (**Ex. G**);

- U.S. Pat. No. D816,308 ("the '308 patent") (**Ex. H**);

- U.S. Pat. No. D894,575 ("the '575 patent") (**Ex. I**); and

- U.S. Pat. No. D903,267 ("the '267 patent") (**Ex. J**).

The above-listed patents are collectively referred to as the "Asserted Patents."

22.     The Asserted Patents are presumed to be valid. 35 U.S.C. § 282.

23.     Cole Haan marks its products, including those covered by the Asserted Patents, in conformity with 35 U.S.C. § 287. *See* https://www.colehaan.com/Patents.html.

### B. *Defendants' Infringing Activities*

24.     Upon information and belief, Defendants' began selling the Accused Products after the filing date of each of the Asserted Patents.

25.     As explained below, the Accused Products infringe the Asserted Patents as indicated by the "X" in the respective row/column in the following chart:

|  | '511 Patent | '163 Patent | '262 Patent | '264 Patent | '265 Patent | '308 Patent | '575 Patent | '267 Patent |
|---|---|---|---|---|---|---|---|---|
| Urban | X | X |  |  |  | X | X | X |
| Merino | X | X |  |  |  |  |  | X |
| Flexknit | X | X | X | X | X | X |  | X |
| Swift | X | X |  |  |  | X | X | X |
| Flow | X | X |  |  |  |  |  | X |
| Portland |  |  |  |  |  |  |  | X |
| Ridge |  |  |  |  |  |  |  | X |
| Oslo |  |  |  |  |  |  |  | X |
| Atlas |  |  |  |  |  |  |  | X |
| Amalfi |  |  |  |  |  |  |  | X |
| Mayfair |  |  |  |  |  |  |  | X |

26.     Upon information and belief, Defendants' copying of Cole Haan's designs was deliberate.

27.     Because Cole Haan marks its product packaging and because the Accused Products are nearly identical to Cole Haan's designs, Cole Haan believes Defendants' either had knowledge of the Asserted Patents prior to the filing of this Complaint or engaged in willful blindness as to the Asserted Patents.

28.     Further, Defendants had actual knowledge of the Asserted Patents. Cole Haan previously contacted Defendants regarding many of the Accused Products and identified the Asserted Patents as being infringed by such shoes.  A true and correct copy of the correspondence is attached hereto as **Ex. K**.

29.     Thus, Defendants had actual and/or constructive knowledge of the Asserted Patents.

30.     Despite its knowledge of and/or willful blindness to the Asserted Patents, Defendants continued to make, use, sell, offer for sale, and/or import the Accused Products in egregious disregard of the Asserted Patents.

31.     Defendants have infringed, and continue to willfully infringe, the Asserted Patents by making, using, selling, offering to sell, and/or importing the Accused Products in this District and elsewhere in the United States, without the consent or authorization of Cole Haan.

32.     Defendants' infringement of the Asserted Patents in connection with the making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of the Accused Products, including the making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of Accused Products into Illinois, is irreparably harming Cole Haan.

**COUNT I - Patent Infringement Under 35 U.S.C. § 271 of the '511 Patent**
**(Urban, Merino, Flexknit, Swift, Flow)**

33.     Cole Haan re-alleges and incorporates by reference the above allegations as if fully set forth herein.

34.     Defendants, without authorization from Cole Haan, have made, used, offered for sale, sold, and/or imported into the United States, and continues to make, use, offer for sale, sell, and/or import into the United States, shoes that infringe at least claims 1 or 21[7] of the '511 patent, including at least the Urban, Merino, Flexknit, Swift, and Flow shoes as set forth below.

**Claim 1 of the '511 Patent (Flexknit)**

35.     Claim 1 of the '511 Patent recites: "A shoe comprising:"

36.     The Flexknit shoe is a shoe, as shown:

---

[7] Cole Haan reserves the right to assert infringement of other claims of the '511 patent in accordance with this Court's Local Patent Rules.



37.     Claim 1 further recites: "a knit upper;"

38.     The Flexknit shoe has a knit upper, as shown:



39.     Claim 1 further recites: "a sole secured to the upper;"

40.     The Flexknit shoe has a sole secured to the upper, as shown:



41.     Claim 1 further recites:

the knit upper having a knitted element, the knitted element being formed of a unitary one-piece construction during a knitting process on a knitting machine, the knitted element comprising a knitted upper heel region, a knitted upper lateral midfoot region, a knitted upper medial midfoot region, a knitted upper metatarsal region, a knitted upper lateral ball region, a knitted upper medial ball region, and a knitted upper toe region, the upper metatarsal region including a knitted upper lateral metatarsal region and a knitted upper medial metatarsal region, the upper having a knitted upper lateral side region and a knitted upper medial side region, the upper lateral side region including the upper lateral midfoot region, the upper lateral metatarsal region and the upper lateral ball region, the upper medial side region including the upper medial midfoot region, the upper medial metatarsal region and the upper medial ball region, the upper toe region being seamlessly knitted with the upper medial and lateral ball regions during the knitting process, the upper medial and lateral ball regions being seamlessly knitted with the upper metatarsal region during the knitting process, the upper metatarsal region being seamlessly knitted with the upper lateral and medial midfoot regions during the knitting process, the knitted element including a wingtip pattern, the wingtip pattern being portions of at least the upper toe region, the upper lateral and medial ball regions, and the upper lateral and medial metatarsal regions;

42.     As shown, the Flexknit shoe comprises the regions set forth in claim 1; likewise,

such regions are knitted as recited in claim 1:



43. The Flexknit shoe has a wingtip pattern being portions of at least the upper toe region, the upper lateral and medial ball regions, and the upper lateral and medial metatarsal regions:



44. Claim 1 further recites:

the upper toe region, the upper lateral and medial ball regions, and the upper lateral and medial metatarsal regions collectively being knitted with the wingtip pattern during the knitting process, the wingtip pattern comprising a medial line of broguing and a lateral line of broguing, the upper toe region, the upper lateral and medial ball regions, and the upper lateral and medial metatarsal regions collectively being knitted with the medial and lateral lines of broguing, the medial line of broguing comprising a wing-shaped curved line of holes having a medial side broguing portion extending forward from at least the upper medial metatarsal region to the upper toe region and a central broguing portion extending rearward from the upper toe region, the lateral line of broguing comprising a wing-shaped curved line of holes having a lateral side broguing portion extending forward from at least the upper lateral metatarsal region to the upper toe region and a central broguing portion extending rearward from the upper toe region, the rearwardly extending central broguing portion of the medial line of broguing converging toward the rearwardly extending central broguing portion of the lateral line of broguing.

45.     As shown above in ¶ 43, the upper toe region, the upper lateral and medial ball regions, and the upper lateral and medial metatarsal regions of the Flexknit shoe is collectively knitted with the wingtip pattern.

46.     The wingtip pattern of the Flexknit shoe also comprises medial and lateral lines of broguing as recited in claim 1:



47.     Accordingly, the Flexknit shoe embodies every limitation of at least claim 1 of the '511 patent.

### Claim 21 of the '511 Patent
### (Urban, Merino, Flexknit, Swift, Flow)

48.     Claim 21 of the '511 Patent recites: "A method of manufacturing an article of footwear having a knitted upper and a sole, the method comprising:"

49.     The Urban, Merino, Flexknit, Swift, and Flow shoes are each an article of footwear having a knitted upper and a sole.



50.     Claim 21 further recites:

knitting with a knitting machine to form a knitted element of the upper such that
the knitted element is of a unitary one-piece construction comprising a knitted
upper heel region, a knitted upper lateral midfoot region, a knitted upper medial
midfoot region, a knitted upper metatarsal region, a knitted upper lateral ball region,
a knitted upper medial ball region, and a knitted upper toe region, the upper
metatarsal region including an upper lateral metatarsal region and an upper medial
metatarsal region, the knitted element having an upper lateral side region and an
upper medial side region, the upper lateral side region including the upper lateral
midfoot region, the upper lateral metatarsal region and the upper lateral ball region,
the upper medial side region including the upper medial midfoot region, the upper
medial metatarsal region and the upper medial ball region, the knitted element
comprising a first area of a jersey stitch knit and a second area of a pointelle stitch
knit, the first area being at least in the upper toe region, the second area being at
least in the upper lateral and medial metatarsal regions;

51.     The Urban, Merino, Flexknit, Swift, and Flow shoes each have a knitted element

of a unitary one-piece construction having the regions recited in claim 21:







52. The Urban, Merino, Flexknit, Swift, and Flow shoes each have a first area of a jersey stitch knit and a second area of a pointelle stitch knit. The first area is at least in the upper toe region and the second area is at least in the upper lateral and medial metatarsal regions.



53.     Claim 21 further recites: "attaching the sole to the upper;"

54.     The Urban, Merino, Flexknit, Swift, and Flow shoes each have a sole attached to an upper:



55.     Claim 21 also recites: "the upper toe region being seamlessly knitted with the upper medial and lateral ball regions during the knitting step;"

56.     The Urban, Merino, Flexknit, Swift, and Flow shoes each have an upper toe region that is seamlessly knitted with the upper medial and lateral ball regions:





57.     Claim 21 also recites: "the upper medial and lateral ball regions being seamlessly knitted with the upper metatarsal region during the knitting step;"

58.     As shown above, the upper medial and lateral ball regions of each of the Urban, Merino, Flexknit, Swift, and Flow shoes are seamlessly knitted with the upper metatarsal region.

59.     Claim 21 also recites: "the upper metatarsal region being seamlessly knitted with the upper lateral and medial midfoot regions during the knitting step;"

60.     As shown above, the upper metatarsal region of each of the Urban, Merino, Flexknit, Swift, and Flow shoes is seamlessly knitted with the upper lateral and medial midfoot regions.

61.     Claim 21 also recites: "the first and second areas being knitted during the knitting step."

62.     As shown above, the first and second areas of each of the Urban, Merino, Flexknit, Swift, and Flow shoes are knitted.

63.     Accordingly, upon information and belief, the Urban, Merino, Flexknit, Swift, and Flow shoes are manufactured via the method of claim 21 of the '511 patent.

64.     As a result of Defendants' infringements of the '511 patent, Cole Haan has suffered, and continues to suffer, economic harm in an amount to be proven at trial.

65.     Moreover, Cole Haan has been and will continue to be irreparably harmed by Defendants' infringements of the '511 patent.

66.     Cole Haan has no adequate remedy at law for Defendants' infringements of the '511 patent.

67.     On information and belief, Defendants' infringements of the '511 patent will continue unless enjoined by this Court.

### COUNT II - Patent Infringement Under 35 U.S.C. § 271 of the '163 Patent (Urban, Merino, Flexknit, Swift, Flow)

68.     Cole Haan re-alleges and incorporates by reference the above allegations as if fully set forth herein.

69.     Defendants, without authorization from Cole Haan, have made, used, offered for sale, sold, and/or imported into the United States, and continues to make, use, offer for sale, sell, and/or import into the United States, shoes that infringe at least claim 1[8] of the '163 patent, including at least the Urban, Merino, Flexknit, Swift, and Flow shoes as set forth below.

### Claim 1 of the '163 Patent

70.     Claim 1 of the '163 Patent recites: "A shoe comprising:"

71.     As set forth above in Count I with respect to the '511 patent, the Urban, Merino, Flexknit, Swift, and Flow shoes are each a shoe.

72.     Claim 1 further recites: "a knit upper;"

---

[8] Cole Haan reserves the right to assert infringement of other claims of the '163 patent in accordance with this Court's Local Patent Rules.

73.    As set forth above in Count I with respect to the '511 patent, the Urban, Merino, Flexknit, Swift, and Flow shoes each comprise a knit upper.

74.    Claim 1 further recites: "a sole secured to the upper;"

75.    As set forth above in Count I with respect to the '511 patent, the Urban, Merino, Flexknit, Swift, and Flow shoes each comprise a sole secured to the upper.

76.    Claim 1 further recites:

the knit upper having a knitted element, the knitted element being formed of a unitary one-piece construction during a knitting process on a knitting machine, the knitted element comprising a knitted upper heel region, a knitted upper lateral midfoot region, a knitted upper medial midfoot region, a knitted upper metatarsal region, a knitted upper lateral ball region, a knitted upper medial ball region, and a knitted upper toe region, the knitted upper metatarsal region including a knitted upper lateral metatarsal region and a knitted upper medial metatarsal region, the upper having a knitted upper lateral side region and a knitted upper medial side region, the upper lateral side region including the upper lateral midfoot region, the upper lateral metatarsal region and the upper lateral ball region, the upper medial side region including the upper medial midfoot region, the upper medial metatarsal region and the upper medial ball region, the upper toe region being seamlessly knitted with the upper medial and lateral ball regions during the knitting process, the upper medial and lateral ball regions being seamlessly knitted with the knitted upper metatarsal region during the knitting process, the knitted []upper metatarsal region being seamlessly knitted with the upper lateral and medial midfoot regions during the knitting process, the knitted element including a wingtip pattern, the wingtip pattern being portions of at least the upper toe region, the upper lateral and medial ball regions, and the upper lateral and medial metatarsal regions;

77.    As set forth above in Count I with respect to the '511 patent, the Urban, Merino, Flexknit, Swift, and Flow shoes each have the claimed regions and the knitted element of the respective shoes have a wingtip pattern in the claimed regions.

78.    Claim 1 further recites:

the knitted element comprising a first area of a first type of knit structure and a second area of a second type of knit structure, the second type of knit structure being different from the first type of knit structure, the first area having a rear boundary, the second area having a forward boundary, the rear boundary of the first area and the forward boundary of the second area being coincident and coextensive with each other and defining a boundary line between the first and second areas, the wingtip pattern comprising the boundary line, the boundary line having a medial

boundary line and a lateral boundary line, the medial boundary line comprising a wing-shaped curved line having a medial side portion extending forward from at least the upper medial metatarsal region to the upper toe region and a central portion extending rearward from the upper toe region, the lateral boundary line comprising a wing-shaped curved line having a lateral side portion extending forward from at least the upper lateral metatarsal region to the upper toe region and a central portion extending rearward from the upper toe region, the rearwardly extending central portion of the medial boundary line converging toward the rearwardly extending central portion of the lateral boundary line.

79. The Urban, Merino, Flexknit, Swift, and Flow shoes each have the claimed first and second areas.



80.    Accordingly, the Urban, Merino, Flexknit, Swift, and Flow shoes embody every limitation of at least claim 1 of the '163 patent.

81.    As a result of Defendants' infringements of the '163 patent, Cole Haan has suffered, and continues to suffer, economic harm in an amount to be proven at trial.

82.    Moreover, Cole Haan has been and will continue to be irreparably harmed by Defendants' infringements of the '163 patent.

83.    Cole Haan has no adequate remedy at law for Defendants' infringements of the '163 patent.

84.     On information and belief, Defendants' infringements of the '163 patent will continue unless enjoined by this Court.

**COUNT III - Patent Infringement Under 35 U.S.C. § 271 of the '262 Patent**
**(Flexknit)**

85.     Cole Haan re-alleges and incorporates by reference the above allegations as if fully set forth herein.

86.     Defendants, without authorization from Cole Haan, have made, used, offered for sale, sold, and/or imported into the United States, and continues to make, use, offer for sale, sell, and/or import into the United States, shoes that infringe at least claims 1[9] of the '262 patent, including at least the Flexknit shoe as set forth below.

**Claim 1 of the '262 Patent**
**(Flexknit)**

87.     Claim 1 of the '262 Patent recites: "A method of manufacturing an article of footwear having a knit upper and a sole, the method comprising:"

88.     As set forth above in Count I with respect to the '511 patent, the Flexknit shoe is an article of footwear having a knit upper and sole.

89.     Claim 1 further recites:

knitting with a knitting machine to form a knitted element of the knit upper such that the knitted element is of a unitary one-piece construction comprising a knitted upper heel region, a knitted upper lateral midfoot region, a knitted upper medial midfoot region, a knitted upper metatarsal region including an upper lateral metatarsal region and an upper medial metatarsal region, a knitted upper lateral ball region, a knitted upper medial ball region, a knitted upper toe region, a knitted upper lateral side region including the knitted upper lateral midfoot region, the knitted upper lateral metatarsal region, and the knitted upper lateral ball region, a knitted upper medial side region including the knitted upper medial midfoot region, the knitted upper medial metatarsal region, and the knitted upper medial ball region, a first area of a jersey stitch knit being at least in the knitted upper toe region, and a second area of a pointelle stitch knit being at least in the knitted upper lateral and

---

[9] Cole Haan reserves the right to assert infringement of other claims of the '262 patent in accordance with this Court's Local Patent Rules.

medial metatarsal regions, the first area having a rear boundary, the second area having a forward boundary, the rear boundary of the first area and the forward boundary of the second area being coincident and coextensive with each other and defining a boundary line between the first and second areas, and a line of broguing adjacent the boundary line; and attaching the sole to the knit upper;

90.     As set forth above in Count I with respect to the '511 patent, the Flexknit shoe has the regions recited in claim 1 of the '262 patent.

91.     Likewise, as set forth above in Count II with respect to the '163 patent, the Flexknit shoe comprises the first and second regions recited in claim 1 of the '262 patent.

92.     The first and second areas of the Flexknit shoe also defines a boundary line between the first and second areas and have a line of broguing adjacent the boundary line.

93.     Claim 1 further recites: "the knitted upper toe region being seamlessly knitted with the knitted upper medial and lateral ball regions during the knitting step,"

94.     As set forth above in Count I with respect to the '511 patent, the Flexknit shoe has the knitted upper to region being seamlessly knitted with the upper medial and lateral ball regions.

95.     Claim 1 further recites: "the knitted upper medial and lateral ball regions being seamlessly knitted with the knitted upper metatarsal region during the knitting step,"

96.     As set forth above in Count I with respect to the '511 patent, the Flexknit shoe has the knitted upper medial and lateral ball regions being seamlessly knitted with the knitted upper metatarsal region.

97.     Claim 1 further recites: "the knitted upper metatarsal region being seamlessly knitted with the knitted upper lateral and medial midfoot regions during the knitting step, and"

98.     As set forth above in Count I with respect to the '511 patent, the Flexknit shoe has the knitted upper metatarsal region being seamlessly knitted with the knitted upper lateral and medial midfoot regions.

99.     Claim 1 further recites: "the first and second areas being knitted during the knitting step."

100.    As set forth above in Count I with respect to the '511 patent, the Flexknit shoe has a first and second area that is knitted.

101.    Accordingly, upon information and belief, the Flexknit shoe is manufactured via the method of claim 1 of the '262 patent.

102.    As a result of Defendants' infringement of the '262 patent, Cole Haan has suffered, and continues to suffer, economic harm in an amount to be proven at trial.

103.    Moreover, Cole Haan has been and will continue to be irreparably harmed by Defendants' infringement of the '262 patent.

104.    Cole Haan has no adequate remedy at law for Defendants' infringement of the '262 patent.

105.    On information and belief, Defendants' infringement of the '262 patent will continue unless enjoined by this Court.

**COUNT IV - Patent Infringement Under 35 U.S.C. § 271 of the '264 Patent
(Flexknit)**

106.    Cole Haan re-alleges and incorporates by reference the above allegations as if fully set forth herein.

107.    Defendants, without authorization from Cole Haan, have made, used, offered for sale, sold, and/or imported into the United States, and continues to make, use, offer for sale, sell, and/or import into the United States, shoes having designs that infringe the '264 Patent, including the Flexknit shoe.

108.    Defendants directly infringe the '264 patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling and/or importing the Flexknit shoe, because in the eye of

an ordinary observer, giving such attention as a purchaser usually gives, such products are substantially the same as the '264 patent, since the resemblance between the two is such as to deceive the ordinary purchaser, inducing the observer to purchase one supposing it to be the other.

109.    The aforementioned resemblance between such product and the '264 patent is apparent when comparing the similarities in the overall claimed design of the '264 patent and the design of the Flexknit shoe, as shown in the side-by-side comparison of figures of the '264 patent and the such product.

110.    The below chart is a side-by-side comparison of the figures of the '264 patent to the Flexknit shoe.

| Cole Haan's D809,264[10] | Flexknit |
|---|---|
|  | |

[10] As set forth in the '264 patent, "The broken lines immediately adjacent to the photographic area define the bounds of the claimed design, and form no part thereof. The broken lines showing the remainder of the shoe are for environmental purposes only and form no part of the claimed design."



Fig. 2

Fig 3

Fig 4



Fig. 5

Fig. 6



111.    Cole Haan has suffered, and continues to suffer, economic harm as a result of Defendants' infringement in an amount to be proven at trial.

112.    Cole Haan has been and will continue to be irreparably harmed by Defendants' infringement of the '264 patent.

113.    Cole Haan has no adequate remedy at law for Defendants' infringement of the '264 patent.

114.    On information and belief, Defendants' infringement of the '264 patent will continue unless enjoined by this Court.

**COUNT V - Patent Infringement Under 35 U.S.C. § 271 of the '265 Patent**
**(Flexknit)**

115.    Cole Haan re-alleges and incorporates by reference the above allegations as if fully set forth herein.

116.    Defendants, without authorization from Cole Haan, have made, used, offered for sale, sold, and/or imported into the United States, and continues to make, use, offer for sale, sell,

and/or import into the United States, shoes having designs that infringe the '265 Patent, including all of the Flexknit shoe.

117.    Defendants directly infringe the '265 patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling and/or importing the Flexknit shoe, because in the eye of an ordinary observer, giving such attention as a purchaser usually gives, such products are substantially the same as the '265 patent, since the resemblance between the two is such as to deceive the ordinary purchaser, inducing the observer to purchase one supposing it to be the other.

118.    The aforementioned resemblance between such product and the '265 patent is apparent when comparing the similarities in the overall claimed design of the '265 patent and the design of the Flexknit shoe, as shown in the side-by-side comparison of figures of the '265 patent and the such product.

119.    The below chart is a side-by-side comparison of the figures of the '265 patent to the Flexknit shoe.



| Cole Haan's D809,265[11] | Flexknit |
| --- | --- |

---

[11] As set forth in the '265 patent, "The broken lines immediately adjacent to the photographic area define the bounds of the claimed design, and form no part thereof. The broken lines showing the remainder of the shoe are for environmental purposes only and form no part of the claimed design."



Fig. 2

Fig. 3

Fig. 4



Fig. 5

Fig. 6



Fig. 7

120.    Cole Haan has suffered, and continues to suffer, economic harm as a result of Defendants' infringement in an amount to be proven at trial.

121.    Cole Haan has been and will continue to be irreparably harmed by Defendants' infringement of the '265 patent.

122.    Cole Haan has no adequate remedy at law for Defendants' infringement of the '265 patent.

123.    On information and belief, Defendants' infringement of the '265 patent will continue unless enjoined by this Court.

**COUNT VI - Patent Infringement Under 35 U.S.C. § 271 of the '308 Patent
(Urban, Flexknit, Swift)**

124.    Cole Haan re-alleges and incorporates by reference the above allegations as if fully set forth herein.

125.    Defendants, without authorization from Cole Haan, have made, used, offered for sale, sold, and/or imported into the United States, and continues to make, use, offer for sale, sell,

and/or import into the United States, shoes having designs that infringe the '308 Patent, including all of the Urban, Flexknit, and Swift shoes.

126. Defendants directly infringe the '308 patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling and/or importing the Urban, Flexknit, and Swift shoes, because in the eye of an ordinary observer, giving such attention as a purchaser usually gives, such products are substantially the same as the '308 patent, since the resemblance between the two is such as to deceive the ordinary purchaser, inducing the observer to purchase one supposing it to be the other.

127. The aforementioned resemblance between such products and the '308 patent is apparent when comparing the similarities in the overall claimed design of the '308 patent and the design of the Urban, Flexknit, and Swift shoes, as shown in the side-by-side comparison of figures of the '308 patent and the such products.

128. The below chart is a side-by-side comparison of the figures of the '308 patent to the Urban, Flexknit, and Swift shoes.

| Cole Haan's D816,308[12] | Urban |
|---|---|



FIG. 1

FIG. 2

FIG. 3

---

[12] As set forth in the '308 patent, "The broken lines depicting the tongue, heel pull-strap, eyelets, and inside surfaces of the shoe form no part of the claimed design."



FIG. 4

FIG. 5

FIG. 6



| Cole Haan's D816,308 | Flexknit |
|---|---|
| FIG. 1 | |
| FIG. 2 | |
| FIG. 3 | |
| FIG. 4 | |



FIG. 5

FIG. 6



| Cole Haan's D816,308 | Swift[13] |
|---|---|

FIG. 1

FIG. 2

[13] Images of the shoe were taken from the Breeze Website and may be cropped and/or rotated as compared to the original image.



FIG. 3

FIG. 4



FIG. 5

FIG. 6

129.    Cole Haan has suffered, and continues to suffer, economic harm as a result of Defendants' infringements in an amount to be proven at trial.

130.    Cole Haan has been and will continue to be irreparably harmed by Defendants' infringements of the '308 patent.

131.    Cole Haan has no adequate remedy at law for Defendants' infringements of the '308 patent.

132.    On information and belief, Defendants' infringements of the '308 patent will continue unless enjoined by this Court.

### COUNT VII - Patent Infringement Under 35 U.S.C. § 271 of the '575 Patent
### (Urban, Swift)

133.    Cole Haan re-alleges and incorporates by reference the above allegations as if fully set forth herein.

134.    Defendants, without authorization from Cole Haan, have made, used, offered for sale, sold, and/or imported into the United States, and continues to make, use, offer for sale, sell, and/or import into the United States, shoes having designs that infringe the '575 Patent, including all of the Urban and Swift shoes.

135.    Defendants directly infringe the '575 patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling and/or importing the Urban and Swift shoes, because in the eye of an ordinary observer, giving such attention as a purchaser usually gives, such products are substantially the same as the '575 patent, since the resemblance between the two is such as to deceive the ordinary purchaser, inducing the observer to purchase one supposing it to be the other.

136.    The aforementioned resemblance between such products and the '575 patent is apparent when comparing the similarities in the overall claimed design of the '575 patent and the design of the Urban and Swift shoes, as shown in the side-by-side comparison of figures of the '575 patent and the such products.

137.    The below chart is a side-by-side comparison of the figures of the '575 patent to the Urban and Swift shoes.

| Cole Haan's D894,575[14] | Urban |
|---|---|
|  FIG. 1 |  |
|  FIG. 2 |  |

[14] As set forth in the '575 patent, "The broken lines immediately adjacent the photographic area represent unclaimed boundaries of the design. The broken lines showing the remainder of the shoe are for environmental purposes only and form no part of the claimed design. Color is unclaimed and forms no part of the claimed design."



FIG. 3

FIG. 4

FIG. 5



FIG. 6

FIG. 7



FIG. 8

| Cole Haan's D894,575 | Swift[15] |
|---|---|



FIG. 1

---

[15] Images of the shoe were taken from the Breeze Website and may be cropped and/or rotated as compared to the original image.



FIG. 2

FIG. 3

FIG. 4



FIG. 5

FIG. 6



138.    Cole Haan has suffered, and continues to suffer, economic harm as a result of Defendants' infringements in an amount to be proven at trial.

139.    Cole Haan has been and will continue to be irreparably harmed by Defendants' infringements of the '575 patent.

140.    Cole Haan has no adequate remedy at law for Defendants' infringements of the '575 patent.

141.    On information and belief, Defendants' infringements of the '575 patent will continue unless enjoined by this Court.

**COUNT VIII - Patent Infringement Under 35 U.S.C. § 271 of the '267 Patent**
**(All Accused Products)**

142.    Cole Haan re-alleges and incorporates by reference the above allegations as if fully set forth herein.

143.    Defendants, without authorization from Cole Haan, have made, used, offered for sale, sold, and/or imported into the United States, and continues to make, use, offer for sale, sell, and/or import into the United States, shoes having designs that infringe the '267 Patent, including all of the Accused Products.

144.    Defendants directly infringe the '267 patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling and/or importing the Accused Products, because in the eye of an ordinary observer, giving such attention as a purchaser usually gives, such products are substantially the same as the '267 patent, since the resemblance between the two is such as to deceive the ordinary purchaser, inducing the observer to purchase one supposing it to be the other.

145.    The aforementioned resemblance between such products and the '267 patent is apparent when comparing the similarities in the overall claimed design of the '267 patent and the design of the Accused Products, as shown in the side-by-side comparison of figures of the '267 patent and the such products.

146.    The below chart is a side-by-side comparison of the figures of the '267 patent to the Accused Products.

| Cole Haan's D903,267[16] | Urban |
|---|---|
|  FIG. 1 |  |
|  FIG. 2 |  |

[16] As set forth in the '267 patent, "The broken lines immediately adjacent the shaded areas represent the bounds of the claimed design while all other broken lines are directed to environment and are for illustrative purposes only; the broken lines form no part of the claimed design."

- 52 -



FIG. 3

FIG. 4

FIG. 5



FIG. 6

FIG. 7

FIG. 8

| Cole Haan's D903,267 | Merino[17] |
|---|---|
|  FIG. 1 |  |
|  FIG. 2 |  |

[17] Images of the shoe were taken from the Breeze Website and may be cropped and/or rotated as compared to the original image.



FIG. 3

FIG. 4



FIG. 5

FIG. 6



FIG. 7

FIG. 8



| Cole Haan's D903,267 | Flexknit |
|---|---|
| FIG. 1 | |
| FIG. 2 | |



FIG. 3

FIG. 4

FIG. 5



FIG. 6

FIG. 7

FIG. 8

| Cole Haan's D903,267 | Swift[18] |
|---|---|
|   FIG. 1 |  |
|   FIG. 2 |  |

[18] Images of the shoe were taken from the Breeze Website and may be cropped and/or rotated as compared to the original image.



FIG. 3

FIG. 4



FIG. 5

FIG. 6

FIG. 7



FIG. 8

| Cole Haan's D903,267 | Flow[19] |
|---|---|



FIG. 1

---

[19] Images of the shoe were taken from the Breeze Website and may be cropped and/or rotated as compared to the original image.



FIG. 2

FIG. 3



FIG. 4

FIG. 5

FIG. 6



FIG. 7

FIG. 8

| Cole Haan's D903,267 | Portland[20] |
|---|---|
| <br>FIG. 1 |  |
| <br>FIG. 2 |  |

---

[20] Images of the shoe were taken from the Breeze Website and may be cropped and/or rotated as compared to the original image.



FIG. 3

FIG. 4

FIG. 5



FIG. 6

FIG. 7

FIG. 8

| Cole Haan's D903,267 | Ridge[21] |
|---|---|
|  FIG. 1 |  |
|  FIG. 2 |  |

[21] Images of the shoe were taken from the Breeze Website and may be cropped and/or rotated as compared to the original image.



FIG. 3

FIG. 4



FIG. 5

FIG. 6

FIG. 7



| Cole Haan's D903,267 | Oslo[22] |
|---|---|

FIG. 8

FIG. 1

---

[22] Images of the shoe were taken from the Breeze Website and may be cropped and/or rotated as compared to the original image.



FIG. 2

FIG. 3



FIG. 4

FIG. 5

FIG. 6



FIG. 7

FIG. 8

| Cole Haan's D903,267 | Atlas[23] |
|:---:|:---:|
| <br>FIG. 1 |  |
| <br>FIG. 2 |  |

---

[23] Images of the shoe were taken from the Breeze Website and may be cropped and/or rotated as compared to the original image.



FIG. 3

FIG. 4



FIG. 5

FIG. 6

FIG. 7



| Cole Haan's D903,267 | Amalfi[24] |
|---|---|



[24] Images of the shoe were taken from the Breeze Website and may be cropped and/or rotated as compared to the original image.



FIG. 2

FIG. 3



FIG. 4

FIG. 5

FIG. 6



FIG. 7

FIG. 8



| Cole Haan's D903,267 | Mayfair[25] |
|---|---|

---

[25] Images of the shoe were taken from the Breeze Website and may be cropped and/or rotated as compared to the original image.



FIG. 3

FIG. 4



FIG. 5

FIG. 6



147.    Cole Haan has suffered, and continues to suffer, economic harm as a result of Defendants' infringements in an amount to be proven at trial.

148.    Cole Haan has been and will continue to be irreparably harmed by Defendants' infringements of the '267 patent.

149.    Cole Haan has no adequate remedy at law for Defendants' infringements of the '267 patent.

150.    On information and belief, Defendants' infringements of the '267 patent will continue unless enjoined by this Court.

**JURY DEMAND**

151.    Pursuant to Federal Rule of Civil Procedure 38(b), Cole Haan demands a trial by jury of all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Cole Haan prays for judgment against Defendants as follows:

A.    A judgment and order that Defendants have infringed the Asserted Patents by making, using, offering to sell, selling, and/or importing the Accused Products into the United States;

B.    A judgment and order permanently enjoining Defendants and their affiliates, officers, agents, employees, attorneys, and all other persons acting in concert with Defendants, from infringing the Asserted Patents;

C.    A judgment and order mandating the removal of the Accused Products from the Breeze Website and any other website/ecommerce platform the Accused Products are sold;

D.    A judgment and order that Defendants' infringements of the Asserted Patents have been willful;

E.    A judgment and order requiring Defendants to pay Cole Haan damages adequate to compensate Cole Haan for Defendants' infringements of the Asserted Patents pursuant to 35 U.S.C. § 284 and/or 35 U.S.C. § 289;

F.    A judgment and order requiring Defendants to pay Cole Haan supplemental damages or profits for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed;

G.    A judgment and order requiring Defendants to pay Cole Haan increased damages up to three times the amount found or assessed pursuant to 35 U.S.C. § 284;

H.    A judgment and order requiring Defendants to pay Cole Haan pre-judgment and post-judgment interest on any damages or profits awarded;

I.    A determination that this action is an exceptional case pursuant to 35 U.S.C. § 285;

J.    An award of Cole Haan's attorneys' fees for bringing and prosecuting this action;

K.    An award of Cole Haan's costs and expenses incurred in bringing and prosecuting this action; and

L.    Such further and additional relief as this Court deems just and proper.

Dated: February 6, 2025

Respectfully submitted,

By: /s/ Alan H. Norman

THOMPSON COBURN LLP

Alan H. Norman, IL 38555
Matthew A. Braunel, IL 6276394
Alex D. Weidner, IL 6337322
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, MO 63101
T: (314) 552-6000
F: (314) 552-7000
anorman@thompsoncoburn.com
mbraunel@thompsoncoburn.com
aweidner@thompsoncoburn.com

Sartouk H. Moussavi, IL 6313554
55 East Monroe Street, 37th Floor
Chicago, IL 60603
T: (312) 346-7500
smoussavi@thompsoncoburn.com

*Attorneys for Plaintiff Cole Haan LLC*